## L. R. Ermeling v. Gibson Canning Co. et al.
## Same v. Wesley S. Guy et al.
## Same, doing business as L. R. Ermeling & Co. v. Isaac Horner et al.

1. FACTORS—*Have Lien upon Goods in Their Possession.*—A factor has a lien for his disbursements, commissions and advances on the goods in his possession. He can not acquire a lien upon goods or other proceeds by making advances after the possession of the goods has passed to a purchaser.

2. PRACTICE—*Assignee of Chose in Action Must Sue in Name of Assignor.*—A factor who sells in his own name the goods intrusted to him for sale and advances the price to the owner, loses his lien and becomes merely an assignee of a chose in action, and, his principal being known, he must bring suit in his principal's name for the purchase price.

3. SAME—*Waiver of Tort by Bringing Action in Attachment.*—One who brings an action of attachment against a party accused of a fraud in purchasing goods, affirms the sale to him and can not proceed against him for the tort.

Attachment, Assumpsit, and Bill of Interpleader.—Three cases consolidated. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Affirmed. Opinion filed December 10, 1902. Rehearing denied January 6, 1903.

JOHN S. McCLURE and A. M. LASLEY, attorneys for appellant.

HAMLINE, SCOTT & LORD, attorneys for appellees.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

A communication dated Milwaukee, Wisconsin, October 23d, signed " W. S. Guy," was upon that day telegraphed to the Gibson Canning Company at Gibson City, Iowa, upon the strength of which and communications previously had between the Canning Company and some person signing himself " W. S. Guy," the Gibson Canning Company on the 26th of October, 1900, shipped to Wesley S. Guy, at

Milwaukee, one car of canned corn, consisting of 700 cases, and invoiced the corn at sixty-five cents per dozen, less freight. When this car of corn arrived at Milwaukee, some person representing himself as the consignee, or acting for him, had the corn shipped by boat to C. Lamb, in Chicago, where it arrived November 1, 1900.

L. R. Ermeling, appellant, at that time was, and for some time prior thereto had been, in the commission business in the city of Chicago, and had for two or three years before this, been acquainted with a man by the name of C. Lamb, and another man by the name of Bunn, and had prior to this time done business for them, Lamb and Bunn.

Upon the arrival of the corn in Chicago, Lamb and Bunn went to Mr. Ermeling's place of business and asked him to handle the corn; and there entered into a contract with him, agreeing to pay him ten per cent commission to handle the corn for them, which Mr. Ermeling agreed to do. Mr. Lamb indorsed the bill of lading and Mr. Ermeling sent to the dock for, and had brought to his place of business, twenty-five cases, from which he took samples and went out to sell the corn—Lamb and Bunn limiting him to sixty-five cents, minimum selling price. Among other places, Ermeling went to that of Horner & Company, appellees. From them he received an offer of fifty-eight and one-half cents and reported this to Lamb and Bunn, who told him to sell it to Horner & Company at that price; whereupon he communicated his acceptance of their offer to Horner & Company and delivered them the corn.

Ermeling made the sale to Horner & Company in his own name, paid the freight on the goods to the Goodrich Transportation Company and paid for delivering the goods to Horner & Company. The sale was a cash sale, but under the custom of the street, ten days are allowed for payment upon such sales. Ermeling testifies that he made the sale to Horner & Company the first of November; that after he had made the sale, Lamb and Bunn told him they would like to have the money; that he told them that the goods were sold for cash in ten days, but that he would

advance them the money, and that on the first of Novem-
ber, he gave them $100; that the goods were delivered to
Horner & Company the 2d and 3d of November; that he saw
Lamb again on the 5th of November and on that day gave
to Lamb and Bunn the balance of the purchase price, de-
ducting his disbursements and commissions. About the
middle of November, the president of the Gibson Canning
Company came to Chicago and saw Ermeling, who told
him that he had paid Lamb and Bunn for the corn. Lamb
and Bunn have disappeared, and so far as is known, at the
time the goods were ordered from the Gibson Canning
Company, there was residing in Milwaukee no such man
as Wesley S. Guy. Some time previous there had been
there a responsible merchant, bearing that name; he was
not living at the time the goods were ordered of the
Canning Company. In October or November, 1900, there
was in Milwaukee a man at a vacant store, number 428
Market street, who went by the name of W. S. Guy.
This man, having the freight bill for the corn shipped by
the Canning Company to W. S. Guy, gave it to a teamster,
who therewith got the goods; and as ordered by Guy, took
them to the dock of the Goodrich Transportation Com-
pany in Milwaukee; from thence they were by Guy con-
signed to "C. Lamb, Chicago." It seems probable that
Lamb went to Milwaukee and communicated with the
Canning Company, using the name of W. S. Guy. Erme-
ling testifies that he paid Lamb and Bunn with cash and
checks drawn to the order of currency. November 20th,
the Gibson Canning Company brought suit in attachment
against Wesley S. Guy and against Ermeling and Horner
& Company, as garnishees, filing interrogatories for them
to answer. On the 17th of December, Ermeling filed
answers to the interrogatories propounded to him, each
being answered in the negative. Horner & Company
did not file answers to the interrogatories propounded
to them until the 12th day of June, 1901. No replication
was filed by the Gibson Canning Company to the answers
of Ermeling until the 12th day of June, 1901. Upon the

12th day of June, 1901, the Gibson Canning Company filed its replication to the answers of Horner & Company. November 21, 1900, Ermeling began in the Superior Court an action in assumpsit against Horner & Company. December 12, 1900, Horner & Company filed in the Circuit Court a bill of interpleader against W. S. Guy, L. R. Ermeling and the Gibson Canning Company, asking that said defendants be required to interplead, and for an injunction against the Gibson Canning Company and Ermeling from prosecuting their respective suits against them, the complainants.

December 16th, Ermeling appeared in court and stipulated to stay his suit against Horner & Company until the disposition of the interpleader cause.

February 15, 1901, Ermeling filed an answer to the bill of interpleader, February 6, 1901, the Gibson Canning Company answered the bill of interpleader. June 5, 1901, Horner & Company filed their replication to these answers. On the 5th of June, 1901, counsel for all parties being present in the Circuit Court before Judge Dunne, Mr. Hamline, of the Gibson Canning Company, stated that it was ready to have the money owing by Horner & Company paid into court, and have an arrangement made by which all the issues could be heard at one time.

Counsel for Ermeling asked: "Are you willing to so stipulate?"

Mr. Hamline: We are willing to have an order entered, a jury summoned, and this attachment case tried, and if we win the money that Horner had, it shall be paid over to us, and if we lose the money Horner had, it is to be paid to them.

Mr. Lasley: We will submit it to this court on that proposition.

" Mr. Hamline: Subject to the right of appeal.

Mr. Lasley: Or waive the right to a jury and submit it to this court.

The Court: The two common law cases are consolidated with this case, and this court enters a final order that will dispose of all the equities and legal rights of the parties. Is that satisfactory to all?

Mr. Hamline: Yes.

The Court:   Do you want the issues of fact tried by a jury?

Mr. Hamline:   I don't know what the practice is.

The Court:   We will make the order now; by stipulation of the parties, two cases at common law are consolidated with this case, and all three cases are consolidated in this court; the jury is waived on the common law issues and all issues submitted to this court for final determination, and the court to enter any such order in law or equity as the interests of the parties shall demand, subject to the right of appeal.

Mr. Lasley:   In this interpleader case, if the interpleader should stand, Mr. Whitney says he will claim no solicitor's fees; that he will pay it in full."

Counsel for Ermeling, appellant, insist that the final orders of the Circuit Court are not binding upon him, because the issues in the attachment suits were not made up by the filing of replication until the 12th day of June, 1901.

The Circuit Court had jurisdiction in the matter of the bill of interpleader filed by Horner & Company. This jurisdiction was submitted to by Ermeling when he filed his answer to such bill. The only purpose of the interpleader was to stop the proceedings in the two suits brought against Horner & Company and to have all the matters therein involved determined under the bill of interpleader. Not only was the jurisdiction in the matter of interpleader submitted to by Ermeling and the Gibson Canning Company, but it was in open court agreed that the Circuit Court might proceed to hear, determine and render final judgment as to all matters involved in the three suits. This it did. Under this agreement, made in open court, it is immaterial whether the issues in either of the cases at law had been fully determined or not. It is insisted by counsel for Ermeling that the Gibson Canning Company, by bringing this suit of attachment against W. S. Guy and making Ermeling and Horner parties defendant thereto as garnishees, affirmed the sale to Guy, and thus the possession which Lamb and Bunn had to the corn and the title thereto claimed by them, and that from this it follows

that Ermeling, being a factor employed by Lamb and Bunn, having received the possession of the goods by the transfer of the bill of lading issued by the carrier in whose custody they were, had a lien on the goods for his disbursements, commissions and advances. A factor has a lien for his disbursements, commissions and advances on the goods in his possession. He can not acquire a lien upon goods or other proceeds by making advances after the possession of the goods has passed to a purchaser. Ewell's Evans on Agency, marginal paging 364; Robinson v. Larrabee, 63 Me. 116; Spalding v. Adams, 32 Me. 212; Byers v. Danley, 27 Ark. 77.

Ermeling testified that he made the sale on the first of November; that on the first of November he advanced to Lamb and Bunn $100; that he thinks the goods were taken over to Horner & Company the second and third; and that he gave them the balance of the money November fifth. At least two days before that, possibly more, the transaction between Lamb and Bunn, and Horner & Company, so far as the sale and delivery of the goods is concerned, was closed. Horner & Company were, according to the testimony of Ermeling, then the debtors of Lamb and Bunn for the purchase price of goods; already fully delivered, by an advance at that time made by Ermeling, he acquired as to such advance only the rights of an assignee of a chose in action, and did not acquire a lien on the purchase price, although he did in equity acquire the right which Lamb and Bunn then had to have the indebtedness of Horner & Company paid to him. Congress Construction Company v. Farson & Libbey Co., 101 Ill. App. 279.

The question is not whether Lamb and Bunn might not have sold and conveyed a good title to these goods to Ermeling, because this was not attempted. While it is true that the sale to Horner & Company was made by Ermeling in his own name, and had not his principals been disclosed, he might have maintained a suit in his own name, yet, it appearing that he was but an agent acting for Lamb and Bunn, the indebtedness of Horner & Company was not to him but to Lamb and Bunn. Ermeling's right of action, as to ad-

vances, made after he ceased to be a factor, was only to bring suit in the name of Lamb and Bunn against Horner & Company. Ewell's Evans on Agency, star paging 382–396–402.

It is true, as is urged by appellant, that the Gibson Canning Company, having brought an action of attachment against Guy, thereby affirmed the sale to him and can not proceed against him for the tort of which he seems to have been guilty. The comments in Hunter v. Prinsep, 10 East, 378, upon the rule as to such matters are suggestive.

We are not, however, prepared to hold that such action amounts to a recognition that title to the property passed to Lamb, Bunn or Ermeling, and that it must recognize the liens upon the goods claimed to have been created by their action. As before stated, it has not been shown that Guy did more than to consign the goods to Lamb.

If Ermeling had been able to show that Lamb, under the name of Guy, bought these goods, or that Guy authorized Lamb to sell them, it would have appeared that he, Ermeling, was a factor of the owner or one authorized to sell and thus might have had a valid lien. The case is not that of an asserted lien for something essential to the preservation of the property, as for storage, but of a lien claimed to have arisen out of a sale by one as to whom it is conjectured, only, there may have been given authority to sell by the party guilty of the fraud, this lien being asserted against the party defrauded.

It is insisted by counsel for the Gibson Canning Company that Ermeling was a party to the fraud carried on by Guy, Lamb and Bunn, and that he has never paid Lamb and Bunn as he claims.

Ermeling, in his answer to the bill of interpleader, says that he was at no time the agent of Wesley S. Guy for the sale of said goods and merchandise, or of any other goods and merchandise, and denies that the said W. S. Guy was the principal in the transaction. Neither Lamb nor Bunn ever had, to the knowledge and consent of the Gibson Canning Company, anything to do with this corn. That com-

pany, as it supposed, sold the corn to W. S. Guy. In some manner Lamb and Bunn obtained possession of the corn shipped by the Canning Company to W. S. Guy. It is only by assuming that Lamb, by personating W. S. Guy, deceived the canning company and made with it a contract in the name of W. S. Guy, that Lamb and Bunn acquired any title to the property or right to dispose of the same. There is no evidence that Lamb and Bunn, or either, purchased the goods of Guy or were authorized by Guy to sell the corn. The position of Ermeling, that the Canning Company, by bringing this attachment against Guy and garnisheeing Horner & Company and him, Ermeling, is a ratification of the sale by them made to Guy, is, so far as the evidence goes, based upon the theory that Lamb or Bunn, by assuming the name of Guy, succeeded in purchasing and obtaining possession of the corn from the Canning Company.

Ermeling, in his testimony, says that in the sale of said corn he acted as the agent of Lamb and Bunn. It may be, as he states, that instead of making checks payable to their order, he gave them checks payable to currency, because they were strangers here in the city, " only came in occasionally." Yet it would seem that his suspicion as to the transaction would have been aroused by their agreement to pay him ten per cent commission, in a market where, according to the evidence, brokerage runs from two to two and one-half per cent, and where, when accounts are guaranteed, five per cent is the limit.

Ermeling does not testify that he guaranteed the account, although he does say he knew Horner & Company to be good. Deducting ten per cent commission and expenses for freight and delivery from corn sold at fifty-eight and one-half cents, makes the net amount realized by Lamb and Bunn less than fifty-two cents, in a market where, according to the testimony, corn was selling from fifty-eight and one-half to seventy cents; it would seem that Ermeling's suspicions would have been aroused by the expressed anxiety of Lamb and Bunn to get cash at once, and willingness to make a sale upon such terms.

The Circuit Court found the Gibson Canning Company entitled to the sum of $819, paid into court by Horner & Company, being the sum which they promised to pay for the corn delivered to them. Nothing was allowed to Ermeling for disbursements, commissions or advances claimed by him to have been made.

We find no sufficient reason for reversing the decree of the Circuit Court, and it is affirmed.